KING, JUSTICE,
concurring in part and in result:
• ¶ 75. Because I disagree with the manner in. which the majority reframed the issues-on appeal and with the majority’s failure to address the issue of Carr’s elementary- school teacher’s opinion, I write separately. I agree, however, with the majority’s assessment that the trial court erred in finding IQ alone determinative and with, the decision to reverse and remand the case.

*946
1. The Standard of Review Argument

¶ 76. The majority “restated” the issue on appeal as “Is it unconstitutional for Carr to bear the burden of proof here, when the trial judge found that the question of his intellectual disability was ‘too close to call’?” Yet, the exact issue raised by Carr was “Will the circuit court’s holding that the outcome of the Atkins hearing was a tie and that, because of the burden of proof, the State must prevail, result in an unacceptable risk of executing a person with mental retardation in violation of Atkins v. Virginia and Chase v. State?” While the distinction is subtle, Carr argued that the facts of his particular case create an unacceptable risk of executing a person with an intellectual disability.[17] The majority’s phrasing broadens that to a more general question of whether it is unconstitutional for Carr to bear the burden of proof in a close case. The majority has unnecessarily “restated” the issue appealed, and with this I take umbrage. Moreover, it is unnecessary for the majority to address this issué, given that it found the trial court erred in finding IQ determinative, and it reverses and remands because this issue is dispositive.

2. Reliance on Teacher’s Opinion

¶ 77. The trial court erred in relying on a teacher’s opinion documented within the State’s report to directly, counter expert testimony. In other words, the teacher did not testify at the hearing and certainly was not qualified as an expert. The State argues that the teacher’s statements were admissible,, but that argument misses the point. Carr does not argue that the teacher’s statements were inadmissible; rather, he argues that the manner in which the circuit court relied upon those statements was error, as the trial court appeared to improperly give the teacher’s opinion the weight of an expert opinion.
¶ 78. The trial court stated in its order:
Contrary to O’Brien’s opinion, Carr’s sixth grade teacher opined that Carr did not suffer from mental retardation during his earlier years but rather suffered from a learning disability- She indicated that special education was available during that time period but that Carr was not placed into special education. It was apparent that O’Brien did not put great stock in the opinions of this former teacher. On the other hand, Macvaugh appears to have put more reliance upon the teacher’s opinion. Macvaugh suggested that because mental retardation is primarily an impediment to learning, it more often than not is first demonstrated in the area of academics. As such, teachers are often the first to note the signs of mental retardation. As to the ultimate issue of whether Carr demonstrated signs-- of mental retardation prior to the age of 18, Mac-vaugh again found the issue “too close to call.”
(Emphasis added.) The trial court ultimately concluded that “Some thirty years after grade school, the defense expert reviews Carr’s academic record and finds mental retardation, while the individual who actually taught Carr, someone who saw him day after day when Carr was in school and who has no interest in this matter at all, is of the view that Carr was not mentally retarded, but rather suffered from a learning disability.”
¶ 79. In both provisions of the order mentioning Carr’s teacher, the trial court *947 uses her opinion to directly counter the expert opinion of Dr. O’Brien. Perhaps this was done because Dr. Maevaugh’s expert opinion was not in direct opposition to Dr. O’Brien’s. Dr. O’Brien found that Carr was mentally retarded, while Dr. Macvaugh found the issue of Carr’s mental retardation too close to call. The teacher was the only person of the definitive opinion that Carr was not mentally retarded. Yet, the telephone interview of a teacher by the State on September 15, 2009, for a hearing that occurred on February 6, 2013, in no way constitutes an expert opinion.
¶80. Mississippi Rule of Evidence 701 provides that lay opinion testimony is limited to an opinion that is: “(a) rationally based on the witness’s perception; (b) helpful to clearly understanding the witness’s testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.” Miss. R. Evid. 701. Rule 702 provides that
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert’s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.
Miss. R. Evid. 702. The determination of whether Carr is intellectually disabled is clearly one that requires specialized knowledge. Carr’s teacher was never qualified as an expert with such knowledge. While certainly the State’s report containing her interview was admissible evidence, relying on her lay opinion that Carr was not mentally retarded, especially to directly contradict the opinion of the defense expert, was improper. Because the trial court improperly treated the teacher’s opinion as expert opinion, I believe this also warrants reversing and remanding this case for a new Atkins hearing in which the trial court should be more cognizant as to its reliance on such evidence.
¶ 81. For these reasons, I concur with the majority’s conclusion that the trial court erred in finding IQ dispositive, and with its assessment that 'IQ must be examined in conjunction with adaptive functioning to determine whether intellectual disability exists, and I consequently agree with the decision to reverse the judgment and remand this case'. However, I disagree with the majority’s decision to address the burden of proof argument, an argument that it problematically’ “restated.” I also believe that we should address the issue of the trial court’s improper use of the teacher’s opinion, and admonish the court not to rely on the opinion of the teacher as if it was an expert opinion.
KITCHENS, J„ JOINS THIS OPINION.

. I note that this hearing was held when the medical term for what is now termed "intellectual disability” was "mental retardation.” Thus, to the extent I refer to the hearing or how witnesses at the hearing opined, I may use the terminology used at that time. Otherwise, I will use the term “intellectual disability.”